UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAMIAN MILHOUSE,

          Plaintiff,

-against-

CO AARON A. COFFIN, CO DOES 1-3,

          Defendants.

Case No.: 9:24-cv-1510 (LEK/MJK)

COMPLAINT

Plaintiff DAMIAN MILHOUSE, by his attorneys, Rickner PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

## NATURE OF THE CASE

1. Plaintiff DAMIAN MILHOUSE ("Plaintiff" or "Mr. Milhouse") brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for violations of his federal and state constitutional rights while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Riverview Correctional Facility, 1110 Tibbitts Dr, Ogdensburg, NY 13669.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Eighth Amendment to the Constitution of the United States, Article 1 of the Constitution of the State of New York, and the common laws of the State and New York.

3. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## VENUE

4. Venue is properly laid in the District Court for the Northern District of New York, because the Plaintiff's claims arose in St. Lawrence County.

**JURY DEMAND**

5. Plaintiff hereby demands a trial by jury.

**PARTIES**

6. Plaintiff was at all times relevant to this action a resident of St. Lawrence County and is currently a resident of New York County.

7. Correction Officer ("CO") Aaron A. Coffin (hereinafter "Defendant Coffin") was at all relevant times described herein an employee at Riverview Correctional Facility, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law and acting in the course and scope of the duties attendant to that employment. He is sued in an individual capacity.

8. CO Does 1-3 (hereinafter "Defendant Does") were at all relevant times described herein employees at Riverview Correctional Facility, employed by DOCCS. The Defendant Does were the individuals who assaulted Plaintiff on or around March 16, 2023. At all relevant times described herein, the Defendant Does were acting under color of New York state law and acting in the course and scope of the duties attendant to their employment. Each Defendant Doe is sued in an individual capacity. The true names of the Defendant Does are not currently known to Plaintiff.

9. CO Doe 1's nickname within Riverview is "Big Red" and he is believed to be a tall white man weighing over 300 pounds with blondish/red shoulder-length hair, long burly facial hair and a mustache.

10. CO Doe 2's nickname within Riverview is "the Milkman" and he is believed to be a white man with a beard/goatee and dark hair.

11. CO Doe 3 is believed to be a white and short chubby man with short dark hair and

a scruffy face/five o'clock shadow.

12. Additionally, one of the Doe Defendants has a tattoo on their leg of a tree, a rope, and a black baby with what appears to be blood.

## THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

13. On March 16, 2023, at approximately 4:00-5:00 p.m., Mr. Milhouse was in the kitchen stacking food trays on a cart to be taken to the Special Housing Unit ("SHU"), also called "the box." Defendant Coffin was supervising.

14. Mr. Milhouse apparently was not moving as fast as Defendant Coffin wanted, and he said something about the "stupid black mother f*****s in this place."

15. One of the civilian cooks attempted to calm Defendant Coffin down and the civilian cook, along with another incarcerated individual, attempted to help Mr. Milhouse with the trays.

16. In response, Defendant Coffin looked at Mr. Milhouse and stated, "Yeah, hurry up and do the box cart, 'cuz you're going to the box too, n****r."

17. Mr. Milhouse began wheeling the cart out of the kitchen and was on his way through the double doors into the security room between the kitchen and mess hall when Defendant Coffin told him to stop and get on the wall.

18. Mr. Millhouse complied and shortly thereafter, CO Does 1-3 arrived and instructed him to keep facing the wall and not look at them.

19. Defendant Coffin then uppercut Mr. Milhouse's testicles so hard that he briefly blacked out and fell to the floor in pain.

20. While on the floor, the Defendants kicked and kneed him repeatedly. Defendant Coffin also repeatedly hit him in the testicles.

21. Defendant Coffin kept screaming at Mr. Milhouse to get back on the wall and every time he did, the Defendants would hit him, specifically in the ribs, and he would fall back to the floor.

22. Defendant Coffin also took out a metal baton and beat Mr. Milhouse with it.

23. Throughout the beating, Defendant Coffin kept repeating, "Tonight," which Mr. Milhouse took to mean they were going to kill him that night. In response, CO Doe 1 said, "I'm not doing all that paperwork tonight. It's not happening."

24. The Defendants continued to beat Mr. Milhouse, kicking, punching, and hitting him everywhere on his body and head with the metal rod.

25. At one point, Mr. Milhouse said, "The only thing I asked for was help," and one the Defendants then grabbed him by his jacket, stood him up against the wall, and beat him more.

26. When the Defendants were done, CO Doe 1 said, "You're going back to your house. What are you gonna do as soon as you get back?"

27. "I'm going to lay down," Mr. Milhouse said.

28. Defendant Coffin told him, "We're gonna break every bone in your body. If I hear that my name is in any reports or lawyer's papers, I will dig the mother f*****g grave myself."

29. They hit him a few more times before he limped back towards his housing unit.

30. Mr. Milhouse estimates the assault took place for approximately 50 minutes.

31. When he got back to his housing unit, Mr. Milhouse immediately got on the phone with his mom to tell her what happened in case he was assaulted again that night. Or worse, was killed.

32. The CO on the floor saw him and asked him what happened. Mr. Milhouse told him he couldn't breathe and that his chest and ribs hurt, and the CO intuited the rest.

33. The CO told Mr. Milhouse if he did not get up and walk back over to where he had been assaulted, they were going to come to the housing unit and kill him.

34. The CO also called a medical emergency and a sergeant and another CO came to escort him. The sergeant is believed to be a white man in his 40s, slim build and face, short dark hair and no facial hair. The CO is believed to be a younger thin white man with dark hair, thick eyebrows and mustache, and buck teeth. When the CO came to escort Mr. Milhouse, he was wearing a hat and blue gloves.

35. The sergeant and CO escorted Mr. Milhouse past medical and into an office, where two more sergeants and two additional COs were waiting. One of the sergeants is believed to be a short and fat white man, olive skin tone, short dark hair, no facial hair, and wears glasses. The other sergeant in the office is believed to be a younger white man, chubby, dark short hair, and no facial hair.

36. The short and fat sergeant told Mr. Milhouse, "If you say what happened, we gotta cover our ass. If we press charges, you'll face a felony. You're gonna go in there [medical] and say you slipped and fell. If you don't, we have to do what we have to do."

37. Mr. Milhouse, terrified, indicated that he understood. The short and fat sergeant escorted Mr. Milhouse into medical to make sure he followed instructions, telling the nurse on duty that he slipped and fell.

38. The nurse went and got a doctor, who looked under Mr. Milhouse's shirt and told him he had to go to the hospital.

39. Instead, Mr. Milhouse was taken back to his housing unit. It was not until several days later that he went to the hospital at Gouverneur Correctional Facility, where he was told he had 3 broken ribs.

40. Mr. Milhouse was unable to participate in many physical activities, including work, for six months while his body healed. He also suffered post-traumatic stress symptoms as a result of the incident.

## THE INJURIES TO PLAINTIFF

41. This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering and injuries to his person, that he was forced to endure as a consequence of the Defendants' decidedly wrongful actions.

42. The Defendants' actions were wanton, reckless, and malicious, as well as in blatant disregard of Plaintiff's civil rights, and as such the Defendants are liable for punitive damages.

43. All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

## FIRST CLAIM FOR RELIEF:
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983
## AGAINST DEFENDANTS

44. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

45. Correction Officers employed by the Department of Corrections and Community Supervision have a duty to refrain from excessive and unnecessary force against persons within their custody and control.

46. Defendants used physical force against Plaintiff, causing broken ribs, bleeding, pain, and bruising.

47. As a result of this excessive force, Plaintiff endured immense pain and suffering and significant, physical injury.

48. Defendants engaged in the use of force that was excessive, malicious, gratuitous, and with the intention of inflicting physical and emotional harm to Plaintiff.

49. That by virtue of the aforementioned acts by Defendants, Plaintiff was deprived civil rights guaranteed under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, and Defendants therefore are liable to Plaintiff for damages under 42 U.S.C. § 1983.

50. As a result of the above unconstitutional conduct, Defendants are liable for punitive damages.

## SECOND CLAIM FOR RELIEF:
## FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983
## AGAINST DEFENDANTS

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

52. Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so.

53. Defendants thereby displayed deliberate indifference to Plaintiff's rights, including Plaintiffs right to be free from excessive force and cruel and unusual punishment.

54. That by virtue of the aforementioned acts by Defendants, Plaintiff was deprived of civil rights guaranteed under the Constitution of the United States, and Defendants therefore are liable to Plaintiff for damages under 42 USC § 1983.

55. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical and emotional injuries.

56. As a result of the above unconstitutional conduct, Defendants are liable for punitive damages.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York  
       December 12, 2024

Rickner PLLC

By: _____  
Sara Wolkensdorfer

14 Wall Street, Suite 1603  
New York, New York 10005  
Phone: (212) 300-6506  
Fax: (888) 390-5401  
*Attorney for Plaintiff*